MARGARET J. CLARK, as Administratrix, etc., of FRANK J. CLARK, Deceased, Appellant, *v.* THE DELAWARE AND HUDSON RAILROAD CORPORATION, Respondent.

Third Department, March 5, 1936.

*Leary & Fullerton* [*James A. Leary* of counsel], for the appellant.

*Joseph Rosch* [*Wallace E. Pierce* and *Raymond L. Carr* of counsel], for the respondent.

RHODES, J. The court, at the close of plaintiff's case, having granted defendant's motion for a nonsuit and for a dismissal of the complaint, our task is to determine whether a question of fact was presented for submission to the jury.

The complaint charges that the death of plaintiff's intestate resulted from injuries inflicted through the negligence of the defendant.

The deceased was a conductor on a freight train of the defendant which had pulled into Dannemora from Lyon Mountain, which was to the south, headed for Plattsburg, which was to the north and east. The train, consisting of four freight cars, a caboose and an engine, stopped on the main track near the station at Dannemora. The engine with a gondola car attached, loaded with crushed stone, was uncoupled from the rest of the train and the crew proceeded with their duties of moving and switching cars. There came a

time when three additional cars were placed on the main track 200 or 300 feet north of the three cars and caboose, and the engine still attached to the car loaded with crushed stone was backing southerly for the purpose of coupling the car of crushed stone to said three cars. It was about twelve-thirty A. M. on November 17, 1932, raining and freezing. The engine with the car of crushed stone backed a distance of 1,000 feet, moving about three or four miles an hour. The engineer was in the cab on the east side of the engine and the fireman on the west side. Seated in the cab, the engineer could look back along the side of the train. The head brakeman in charge of that part of the switching operation, was standing upon the step at the southeast corner of the car of stone, holding on to the grab iron, with a white lantern in his hand, signaling the engineer. He gave the signal to the engineer to move slowly, this signal being given by holding out his arm. He had last seen the conductor about twenty-five minutes previously, standing by the crossing with a white lantern, several hundred feet north of the three cars to which the car of stone was to be coupled. He also saw a white light by the north end of the three cars and caboose further south, which he supposed to be a lantern in the hands of the rear brakeman. The lights of the lanterns could be seen a distance of over 1,000 feet. When the car of stone was backed against the three cars for the purpose of making the coupling the three cars were shoved a distance of one and one-half car lengths, the tracks being level at that place. As the cars came together, the head brakeman testified that he heard the conductor " holler," and he immediately went to him, finding him lying between the east rail of the main tracks and the west rail of a parallel track immediately to the east described as the long siding. The upper part of the conductor's left leg had been crushed. A doctor was called and the conductor, who remained conscious, was removed to a hospital.

The evidence justifies the inference that he was between the cars when he was injured.

The fifth paragraph of the complaint alleges in part that he was injured in the performance of his duties coupling air hose and adjusting coupling devices on said freight train on defendant's main track at Dannemora, N. Y., and was then and there engaged in interstate commerce.

Near the close of plaintiff's case the following was asked by plaintiff's counsel: " I ask if the defendant will admit paragraph 5 of the complaint which was denied in the answer. I understand there is no contention upon that now? " Defendant's counsel did

not then reply, as he was making objection to the reception in evidence of rules and safety suggestions which had been offered in evidence, and following some colloquy between the court and defendant's counsel as to the reception in evidence of such rules and safety suggestions, plaintiff's counsel again asked, " Will you admit paragraph 5 of the complaint? " To which defendant's counsel replied, " Yes, we do."

It is upon this admission supplemented by the testimony in the case that plaintiff bases the argument that a question of fact was presented for the consideration of the jury. The argument is that the engine and car of crushed stone was backed a distance of over 1,000 feet at a rate of speed which must have required at least ten minutes; that the head brakeman and engineer knew or should have known that the conductor was between the cars; that as the light of the conductor's lantern was not seen during this time he must have been between the cars during all of said interval, engaged in his duty of adjusting the coupling devices; that this would indicate that the coupling devices were out of order, since if the appliances were in proper working condition the coupling could be made automatically and in less than ten minutes, and would be made without the necessity of the conductor being between the cars. This argument invokes the provisions of the so-called Safety Appliance Act (U. S. Code, tit. 45, § 2), which makes it unlawful for any interstate railroad to use on its lines any car not equipped with " couplers coupling automatically by impact, and which can be *uncoupled* without the necessity of men going between the ends of the cars."

This argument interpolates into defendant's admission language which is not there, and seeks to draw an inference which is not properly deducible therefrom.

Defendant's counsel did not expressly admit that there was any defect in the coupling appliances and it is not reasonable to suppose that he intended to make any such concession which would practically establish his client's liability, especially since at the time of making the admission he was strenuously opposing plaintiff's claim of negligence and liability. While he did admit the allegations of the fifth paragraph of the complaint, he did not expressly admit the sixth paragraph thereof which had been denied by the answer, and which in part is as follows: " While plaintiff's intestate, Frank J. Clark, was engaged in the performance of his duties coupling the air hose and adjusting the coupling devices on said train, * * * said train was suddenly and violently moved while plaintiff's intestate was between two of the cars in said train."

Furthermore, the answer not only denied defendant's negligence, but affirmatively asserted that the fault was that of the conductor himself.

In the light of the circumstances surrounding the making of the admission and considering the allegations of defendant's answer, the concession simply meant that the defendant admitted that the conductor was engaged in the performance of his duties adjusting coupling devices, but that if he was between the cars while so doing, it was not the fault of the defendant because of a defective coupling or otherwise, but was his own fault. This would be giving to the plaintiff the extreme beneficial interpretation of the admission. The concession that he was engaged in adjusting coupling devices is only part thereof. The language of the admitted paragraph is that the conductor was injured in the performance of his duties " *coupling the air hose* and adjusting the coupling devices." It was stated on the argument and not denied that it is necessary to go between the cars to couple the air hose, and the section of the Safety Appliance Act referred to does not apply to air hose couplings.

Granting, however, that the conductor was between the cars in the performance of his duty, and that the head brakeman and the engineer knew or should have known of the fact, what was their duty? Obviously, they were required to give adequate and timely warning to the conductor, and if such warning was given, then their duty was fulfilled.

If there were proof that some warning was given, then it would be for the jury to say whether such warning was adequate and timely; but here there is absence of any proof of failure to give proper warning.

There is no proof of the failure to comply with any rule or safety suggestion of the defendant, and no proof of the violation of any duty on the part of the defendant.

The judgment and order should, therefore, be affirmed, with costs.

CRAPSER and BLISS, JJ., concur; HILL, P. J., and HEFFERNAN, J., dissent.

Judgment and order affirmed, with costs.